UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bjorn Iverson,

                    Plaintiff,

vs.

City of Brooklyn Center; Hennepin
County; Brooklyn Center Mayor Mike
Elliott, *in his individual and official
capacity*; Brooklyn Center Police
Department Interim Chief Tony Gruenig,
*in his individual and official capacity*;
Hennepin County Sheriff David P.
Hutchinson, *in his official and individual
capacity*; Hennepin County Sheriff's
Office Chief Deputy Tracey Martin, *in
her official and individual capacity*;
Minnesota Department of Public Safety
Commissioner John Harrington, *in his
individual capacity*; Minnesota
Department of Public Safety Assistant
Commissioner Booker Hodges, *in his
individual capacity*; Minnesota State
Patrol Colonel Matthew Langer, *in his
individual capacity*; Minnesota State
Patrol Major Joseph Dwyer, *in his
individual capacity*; Crystal Police Chief
Stephanie Revering, *in her official and
individual capacity*; John Does #1-100, *in
their official and individual capacities*,

                    Defendants.

Case No. 23-CV-0917 (NEB/LIB)

**MEMORANDUM OF LAW**

**IN SUPPORT OF MOTION**

**TO ALTER, AMEND,**

**OR**

**VACATE JUDGEMENT**

**UNDER RULE 59**



# TABLE *of* CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    The PAC should not have been dismissed under Rule 8 . . . . . . . . . . . . . . 5

A. Length alone is not a basis for dismissing the PAC . . . . . . . . . . . . . . 6
   1. Separation of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   2. Number of Claims Asserted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   3. Short and Plain Claim (Not Complaint) . . . . . . . . . . . . . . . . . . . . . . 8
   4. Number of Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   5. Prolixity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   6. Complexity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      a.   The *Iqbal/Twombly* Era . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      b.   Complex Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      c.   Complex Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           i.    First Amendment Retaliation (*Count II*) . . . . . . . . . . . . . . 13
           ii.   *Monell* Policy and/or Custom (*Count VII*) . . . . . . . . . . . 13
           iii.  Civil Conspiracy (*Count VIII*) . . . . . . . . . . . . . . . . . . . . . 14

B. The PAC is not a shotgun pleading . . . . . . . . . . . . . . . . . . . . . . . . . 14
   1. The PAC does not meet the definition of a shotgun pleading . . . . . . . . . 15
   2. Defendants do not properly argue the PAC is a shotgun pleading . . . . . . 16
   3. Numerous claims and defendants do not define a shotgun pleading . . . . . 17

C. The PAC satisfies Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

D. The PAC requires *pro se* standards to be applied . . . . . . . . . . . . . . . . 19

II.  **Plaintiff should be granted leave to amend** . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

   A.  **Plaintiff has shown a willingness to comply** . . . . . . . . . . . . . . . . . . . . **21**

   B.  **Court was aware of statute of limitations** . . . . . . . . . . . . . . . . . . . . . . . **22**

   C.  **Merits, not technicalities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

   D.  **Leave to replead** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

   E.  **Plaintiff seeks guidance or guide posts** . . . . . . . . . . . . . . . . . . . . . . . . **26**

     **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

# TABLE *of* AUTHORITIES

**Federal Cases**

"*Achagzai*" ............................................................................................ 24
    *Achagzai v. Broad. Bd. of Governors*, 109 F.Supp.3d 67 (D.D.C. 2015)

"*Ahmed*" ............................................................................................... 22
    *Ahmed v. Dragovich*, 297 F.3d 201 (CA3 2002)

"*Banister*" ............................................................................................. 5
    *Banister v. Davis*, 140 S. Ct. 1698 (2020)

"*Bank*" ............................................................................................. 23-24
    *Bank v. Pitt*, 928 F.2d 1108 (CA11 1991)

"*Barmapov*" .......................................................................................... 15
    *Barmapov v. Amuial*, 986 F.3d 1321 (CA11 2021) [†]

"*Bennett*" ........................................................................................ 6, 9, 18
    *Bennett v. Schmidt*, 153 F.3d 516 (CA7 1998)

"*Bryan County*" ..................................................................................... 13
    *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)

"*Ciralsky*" ................................................................. 6, 8-9, 11, 16, 19-20
    *Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004) [†]

"*Conley*" ....................................................................................... 5, 11, 24
    *Conley v. Gibson*, 355 U.S. 41 (1957)

"*Cooper*" .............................................................................................. 9
    *Cooper v. Schriro*, 189 F.3d 781 (CA8 1999)

"*Davis*" ............................................................................................... 15
    *Davis v. Coca-Cola Bottling*, 516 F.3d 955 (CA11 2008) [†]

"*Dicken*" ............................................................................................. 22
    *Dicken v. Northwest Eye Center*, 2017 U.S. Dist. LEXIS 83130 (D. Minn. 2017)

"*Edwards*" ........................................................................................... 12
    *Edwards v. City of Florissant*, 58 F.4th 372 (CA8 2023)

---

[†] Quoted and/or Cited in Court's Order [Dkt. #125]

"*Elmore*" ................................................................................................ 22-23
   *Elmore v. Henderson*, 227 F.3d 1009 (CA7 2000)

"*ES Dev*" .................................................................................................... 14
   *ES Development, Inc. v. RWM Enterprises, Inc.*, 939 F.2d 547 (CA8 1991)

"*Ferguson*" ............................................................................................ 21-24
   *Ferguson v. Cape Girardeau County*, 88 F.3d 647 (CA8 1996)

"*Gurman*" ................................................................................................. 15
   *Gurman v. Metro Hous. & Redev. Auth.*, 842 F.Supp.2d 1151 (D. Minn. 2011) [†]

"*Haines*" .................................................................................................... 20
   *Haines v. Kerner,* 404 U.S. 519 (1972)

"*Hawse*" .................................................................................................... 19
   *Hawse v. Page,* 7 F.4th 685 (CA8 2021)

"*Jackson*" .................................................................................................. 25
   *Jackson v. FindJodi.com*, 2021 WL 7542396 (D. Minn. 2021) [†]

"*Jiggetts*" .............................................................................................. 23-25
   *Jiggetts v. District of Columbia*, 319 F.R.D. 408 (D.D.C. 2017)

"*Kittay*" ............................................................................................. 6, 20-21
   *Kittay v. Kornstein*, 230 F.3d 531 (CA2 2000)

"*Kuehl*" ........................................................................................ 9-11, 25-27
   *Kuehl v. F.D.I.C*, 8 F.3d 905 (CA1 1993) [†]

"*Landers*" ......................................................................................... 7, 9, 12
   *Landers v. Morgan Asset Mgmt.*, 2010 U.S. Dist. LEXIS 153360 (W.D. Tenn. 2010)

"*Lockheed-Martin*" .......................................................................... 6-7, 11, 13
   *United States v. Lockheed-Martin Corp.*, 328 F.3d 374 (CA7 2003) [†]

"*Main*" ............................................................................................... 9, 18-19
   *Main v. Rio Tinto Alcan, Inc.*, 2023 U.S. Dist. LEXIS 8447 (W.D. Ky. 2013)

"*Magluta*" .................................................................................................. 5-6
   *Magluta v. Samples*, 256 F.3d 1282 (CA11 2001)

[†] Quoted and/or Cited in Court's Order [Dkt. #125]

"*Mask*" .................................................................................... 25
    *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737 (CA8 2014)

"*McKinley*" ................................................................................ 14
    *White v. McKinley*, 519 F.3d 806 (CA8 2008)

"*McLaughlin*" ............................................................................. 22
    *McLaughlin v. Anderson*, 962 F.2d 187 (CA2 1992)

"*Michaelis*" ........................................................................ 11, 19, 24
    *Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437 (CA8 1983) [†]

"*Micklus*" ......................................................................... 10, 25-26
    *Micklus v. Greer*, 705 F.2d 314 (CA8 1983)

"*Nevijel*" ..................................................................... 9-11, 19, 23
    *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671 (CA9 1981) [†]

"*O'Donnell*" .......................................................................... 6-8, 11
    *O'Donnell v. Elgin, J. E. R. Co.*, 338 U.S. 384 (1949) [†]

"*Reinholdson*" ................................................................ 7, 9, 11, 25
    *Reinholdson v. State of Minnesota*, 2002 WL 32658480 (D. Minn. 2002) [†]

"*Roberto's*" ................................................................. 9-11, 18, 24-27
    *Roberto's Fruit Market v. Schaffer*, 13 F.Supp.2d 390 (E.D.N.Y. 1998) [†]

"*Ruby Foods*" ......................................................................... 6-7, 20
    *Davis v. Ruby Foods, Inc.*, 269 F.3d 818 (CA7 2001)

"*Ryan*" ....................................................................................... 5
    *Ryan v. Ryan*, 889 F.3d 499 (CA8 2018)

"*Rydholm*" .................................................................................. 11
    *Rydholm v. Equifax Info. Servs.*, 44 F.4th 1105 (CA8 2022)

"*Salahuddin*" .......................................................................... 23-26
    *Salahuddin v. Cuomo*, 861 F.2d 40 (CA2 1988)

"*Servants*" .............................................................................. 21-22
    *Servants of Paraclete v. Does*, 204 F.3d 1005 (CA10 2000)

[†] Quoted and/or Cited in Court's Order [Dkt. #125]

"*Swierkiewicz*" ..................................................................... 5, 24
   *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)

"*Topchian*" ......................................................................... 5, 19
   *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843 (CA8 2014)

"*Twombly*" ............................................................................ 11
   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

"*Van Horn*" ......................................................................... 21-22
   *Van Horn v. Specialized Support Servs., Inc.*, 269 F.Supp.2d 1064 (S.D. Ia. 2003)

"*Vibe Micro*" ......................................................................... 26
   *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (CA11 2018)

"*Vicom*" .......................................................................... 9-11, 18
   *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771 (CA7 1994) [†]

"*Westinghouse*" ................................................................. 10-11, 25
   *In re Westinghouse Securities Litigation*, 90 F.3d 696 (CA3 1996) [†]

"*White*" ............................................................................... 15
   *White v. Governor Mark Dayton*, 2023 U.S. Dist. LEXIS 71 (D. Minn. 2023)

"*Windsor*" ............................................................................. 8
   *Windsor v. a Federal Executive Agency*, 614 F.Supp. 1255 (M.D. Tenn. 1983)

"*Wisdom*" ............................................................................. 21
   *Wisdom v. First Midwest Bank*, 167 F.3d 402 (CA8 1999)

"*Zhan*" ............................................................................ 11, 20
   *Zhan v. County of Cook*, 2004 U.S. Dist. LEXIS 23763 (N.D. Ill. 2004)

---

[†] Quoted and/or Cited in Court's Order [Dkt. #125]

**Minnesota Cases**

"*Harding*" ............................................................................... 17
    *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824-25 (Minn. 1950)

**Minnesota Statutes**

*Minn. Stat. § 466.02* ................................................................... 17

**Rules**

*Federal Rules of Civil Procedure* ("Fed.R.Civ.P."), Rule 8 ............................ *Passim*
*Federal Rules of Civil Procedure* ("Fed.R.Civ.P."), Rule 11 .......................... 17-18
*Federal Rules of Civil Procedure* ("Fed.R.Civ.P."), Rule 12 ....... 2, 12, 16-17, 19, 21, 27
*Federal Rules of Civil Procedure* ("Fed.R.Civ.P."), Rule 59 ................. 2, 5, 21-22, 28

**Treatise**

"*Wright & Miller*" ...................................................................... 1
    5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* (2d ed. 1990)

## PROCEDURAL BACKGROUND

Plaintiff initiated this action on April 11, 2023, by filing an initial complaint [Dkt. #1]. On July 13, Hennepin County filed a motion to dismiss [Dkt. #13]. Shortly after, on July 21, the Plaintiff's Amended Complaint ("PAC" or "the PAC") was filed and further clarified which specific claims were directed against which specific defendants [Dkt. #21]. The PAC seeks relief against eleven named defendants (two local government entities and nine government officials), and 100 John Does (in which detailed acts are attributed to 16 specific John Does, with the remaining John Does serving as placeholders). Defendants responded to the PAC by filing motions to dismiss [Dkt. #24, #41, #68, #74, & #98] and supporting memoranda [Dkt. #27, #44, #71, #77, & #100]. As a result, Plaintiff filed a response brief to each of the motions [Dkt. #84, #91, #105, #113, & #118]. In response, each Defendant filed a reply brief [Dkt. #92, #95, #108, #116, & #119]. In the midst of this motion activity, on August 14, the Court declined to have a hearing regarding the motions, and instead, declared the Court would make a ruling based on paper submissions alone. [Dkt. #48].

On March 11, 2024, an *Order on Motions to Dismiss* ("Order") granted Defendants' motions to dismiss, and simultaneously dismissed Plaintiff's complaint without prejudice [Dkt. #125]. The following day, on March 12, judgement was filed, case was closed, and Plaintiff was sent an information packet regarding the appeal process [Dkt. #126]. As a result, this case has not progressed beyond the pleading stage.

1

## SUMMARY *of* ARGUMENT

This court issued an order stating that the PAC failed to comply with Rule 8. At 338 pages, Plaintiff certainly understands why such a lengthy complaint may *appear* to violate Rule 8. However, under examination, the PAC is distinguishable from each complaint referenced by the caselaw in support of the Court's Order. In other words, the facts do not support the dismissal of the PAC under Rule 8.

Therefore, the PAC should be examined under the Rule 12 as all parties expected—with reasonable reliance—and, instead, the arguments which have been fully briefed by the parties should be considered. Or, in the alternative, Plaintiff should be granted an opportunity to submit an amended complaint to the Court so the case has an opportunity to be adjudicated on merits rather than technicalities.

Due to statute of limitations, the Court's decision to dismiss without prejudice <u>and</u> without leave to amend is effectively a dismissal *with* prejudice. In other words, the Court sounds a 'death knell' to—at least some of—Plaintiff's claims. In light of governing law, it would be fundamentally unfair to bestow such an extremely harsh penalty on a *pro se* litigant. This is especially true when considering fair and just alternatives.

Therefore, Plaintiff respectfully urges the Court to prevent manifest injustice and remedy errors of law and fact under Rule 59(e).

## STATEMENT OF FACTS

In May of 2020, in response to civil unrest following the death of George Floyd ("Floyd protests"), State Defendants[1] and County Defendants[2] co-created a unified task force group named MACC, which consisted of high-ranking law enforcement officials with policymaking authority that worked in unison, side-by-side, in concert and coordinated fashion with one another ("MACC officials"). Over the course of six days, these MACC officials deployed law enforcement agents who, like those in command, also worked side-by-side and in concert with each other while targeting members of the press for unlawful reprisals. In roughly 40 instances during the Floyd protests, MACC officials and their subordinate law enforcement agents subjected members of the press to either harassment, verbal abuse, threats of violence, threats of arrest, high-velocity projectiles, pepper-spray, flash-bangs, concussion grenades, tear gas, physical abuse, arrest, or some combination thereof.

After the Floyd protests, MACC officials continued to participate in unified operations. With extensive planning, MACC officials prepared for the next episode of civil unrest. This planning and preparation included, among other things, the addition of even more agencies and high-ranking law enforcement officials.[3]

---

[1] Defendants Commissioner Harrington, Assistant Commissioner Hodges, Colonel Langer, and Major Dwyer

[2] Defendants Sheriff Hutchinson and Chief Deputy Martin

[3] Defendant Chief Revering

In April of 2021, in response to civil unrest following the death of Daunte Wright ("Wright protests"), MACC was deployed according to plan. City Defendants[4] joined into MACC alongside State and County Defendants. Together—as a single cohesive unit—the State, County, and City Defendants executed unified law-enforcement operations within the City of Brooklyn Center. As a result, a militarized multi-agency army of law enforcement agents ("MACC law enforcement agents") worked side-by-side and in concert during the Wright protests to target members of the press. Similar to MACC's unified response to the Floyd protests in May of 2020, there were at least <u>35 instances</u> where a member of the press suffered either harassment, verbal abuse, threats of violence, threats of arrest, high-velocity projectiles, pepper-spray, flash-bangs, concussion grenades, tear gas, physical abuse, arrest, or some combination thereof over the course of six days.

Each of the Plaintiff's claims arise from events during the Wright protests. On April 13 and 14, Plaintiff was threatened with arrest if he did not cease reporting and leave the area. Also, on April 14, Plaintiff was threatened with pepper-spray if he remained in the area and continued to report. On April 16, Plaintiff was first targeted, and then shot multiple times with less-lethal projectiles. Also, on April 16, Plaintiff was grabbed, pushed, and threatened with arrest if he did not cease reporting and leave the area.

---

[4] Defendants Mayor Elliott and Interim Chief Gruenig

4

## STANDARD *of* REVIEW

"Rule 59(e) allows a litigant to file a 'motion to alter or amend the judgment.'" *Banister*, 140 S. Ct. at 1703 (quoting Fed.R.Civ.P. 59(e)). As it relates to this motion, Rule 59(e) serves "the limited function of correcting manifest errors of law or fact[.]" *Ryan*, 889 F.3d at 507 (quotation omitted); see also *Banister*, 140 S. Ct. at 1703. Such motions "give[] a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister*, 140 S. Ct. at 1703. "District courts have broad discretion in determining whether to alter or amend judgment under Rule 59(e) . . . ." *Ryan*, 889 F.3d at 507-08 (quotation omitted).

## ARGUMENT

**I.   THE PAC SHOULD NOT HAVE BEEN DISMISSED UNDER RULE 8**

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian*, 760 F.3d at 848 (quotations omitted). Rule 8 exists "to focus litigation on the merits of a claim." *Swierkiewicz*, 534 U.S. at 514; see also *Conley*, 355 U.S. at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").

Defendants have not alleged that Plaintiff's amended pleading is "replete with factual allegations that could not possibly be material to [each] specific count," *Magluta*,

256 F.3d at 1284; full of "rambling irrelevancies," *id.*; or "unintelligible[,]" *Ruby Foods*, 269 F.3d at 820—all of which are instances where other courts have approved striking a complaint that violates Rule 8. Further, Plaintiff's Amended Complaint is not "frivolous on its face," *Ciralsky*, 355 F.3d at 670-71; does not "mingle" counts, *O'Donnell*, 338 U.S. at 392; and the prolixity with which Plaintiff has pled allows the Defendants to have full notice of all possible claims the Plaintiffs can bring. See *Kittay*, 230 F.3d at 541 ("[I]f the court underst[ands] the allegations sufficiently to determine that they could state a claim for relief, the complaint has satisfied Rule 8."). Put simply, "Fat in a complaint can be ignored." *Bennett* 153 F.3d at 518.

## A. LENGTH ALONE IS NOT A BASIS FOR DISMISSING THE PAC

With regards to the PAC's length, there are errors of law and/or fact in the Court's analysis.

Using primarily *Lockheed-Martin* and *Ciralsky* in support, the Court says the PAC "is problematic because of its length alone" and that "Courts have found that complaints that are too long violate the short and plain statement rule."[5] However, there is no text in the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") or applicable caselaw—including those quoted or cited by the Court—that places any specific limit on the length of the complaint. Instead, Rule 8(e) states pleadings must be construed so as to do justice, and "[t]his objective is defeated if excess length becomes a fatal misstep." *Bennett* 153 F.3d at 518.

---

[5] Court's Order, p. 2

To be sure, the Order quotes *Lockheed-Martin*: "Length <u>may</u> make a complaint unintelligible . . . ." *Lockheed-Martin*, 328 F.3d at 378 (emphasis added). Therefore, "[e]xtreme length alone … will not always constitute a violation of Rule 8." *Reinholdson*, 2002 U.S. Dist. LEXIS 18886 *4.

As a result, *Lockheed-Martin* makes it clear that "[s]ome complaints are windy but understandable." *Lockheed-Martin*, 328 F.3d at 378; see also *Landers*, 2010 U.S. Dist. LEXIS 153360 *13 (finding that when plaintiffs have sued twenty-four defendants, and asserted fifteen separate claims, "[i]t is unsurprising that, in a complex case such as this, the complaint would <u>not</u> be a model of brevity." (emphasis added)).

Therefore, if the PAC "performs the essential function of a complaint under the civil rules, which is to put the defendant on notice of the plaintiff's claim" then it would be "an abuse of discretion … to dismiss a complaint merely because of the presence of superfluous matter." *Ruby Foods*, 269 F.3d at 820.

## 1. SEPARATION OF CLAIMS

In support that the PAC violates the "short and plain statement" rule, this Court quotes *O'Donnell*, stating that "sharpening and limiting the issues in the pleading stages is important to facilitate resolution at the final stage."[6]

However, in *O'Donnell*, the "complaint mingled in a single count or cause of action [one theory of recovery] and [another theory of recovery]" which is what prompted the Supreme Court to hold that "[p]leadings will serve the purpose of sharpening and limiting

---

[6] Dkt. #125, p. 3

the issues only if claims based on [one theory of recovery] are set forth separately from those based on [another theory of recovery]." *O'Donnell*, 338 U.S. at 392; see also *Windsor*, 614 F.Supp. at 1257-58 (noting that a complaint was "overly-confusing because the plaintiff has not separated adequately his different claims for relief."). In other words, the *O'Donnell* court found "it will ever be difficult in a jury trial to segregate issues which counsel do not separate in their pleading, preparation or thinking." 338 U.S. at 392.

In contrast, the PAC explicitly separates each theory of recovery into separate counts.

### 2.  NUMBER OF CLAIMS ASSERTED

As *Ciralsky* points out, a lengthy complaint may be excusable "due to the sheer number of claims asserted[.]" *Ciralsky*, 355 F.3d at 670. After all, as *Ciralsky* makes explicitly clear, (1) "[a] party set forth two <u>or more</u> statements of a claim [alternatively or hypothetically,]" and (2) "[a] party may also state as many separate claims … as the party has[.]" *Id.* (quoting Fed.R.Civ.P. 8(e)(2) (emphasis added)).

Therefore, a lengthy complaint is to be expected when it brings 13 non-frivolous claims.

### 3.  SHORT AND PLAIN CLAIM (NOT COMPLAINT)

In its Order, this Court wanted to "underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky*, 355 F.3d at 669. However, *Ciralsky* clarifies that "Rule 8 does not require a 'short and plain *complaint*,' but rather 'a short and plain statement of the *claim*.'" *Ciralsky*, 355 F.3d at 670 (citing Fed.R.Civ.P. 8(a)(2) (emphasis in original)). "Moreover, it is 'each averment of a pleading' that Rule 8(e)(1)

states 'shall be simple, concise, and direct' – not each pleading itself." *Id.* (quoting

Fed.R.Civ.P. 8(e)(1)). In other words, "[t]he plain text of Rule 8 states that <u>claims</u> are to

be succinctly stated." *Landers*, 2010 U.S. Dist. LEXIS 153360 *12 (emphasis added).

"There is no requirement that a party's complaint must be similarly limited." *Id.* (citing

Fed.R.Civ.P. 8(a)(2); *Ciralsky*, 355 F.3d at 670); see also *Main*, 2023 U.S. Dist. LEXIS

8447 *12-13 (finding that, when declining to dismiss the complaint under Rule 8, the

complaint "does present lengthy facts" but is not "so verbose that it is unable to identify

the claims").

### 4.  NUMBER OF DEFENDANTS

The PAC asserts claims, supported by sufficient factual detail, against 2

governments, 9 high-ranking government officials, and 16 individual law enforcement

agents. Under the Federal Rules of Civil Procedure, there is no limit to the number of

defendants which Plaintiff may assert claims.

As a result, the Court should "believe [plaintiff's complaint] is lengthy not because

he failed to state his claims concisely or in compliance with Rule 8, but [in part] because

he named so many defendants." *Cooper*, 189 F.3d at 783.

### 5.  PROLIXITY

"Prolixity is a bane of the legal profession but a poor ground for rejecting potentially

meritorious claims." *Bennett*, 153 F.3d at 518. This is why *Reinholdson* makes it clear that

it is not prolixity in and of itself, but rather "[u]nnecessary prolixity" which may contribute

to a Rule 8 violation. *Reinholdson*, 2002 U.S. Dist. LEXIS 18886 *5 (emphasis added). In

support of its Order, the court quotes and/or cites *Roberto's*, *Vicom*, *Nevijel*, and *Kuehl*.

In *Roberto's*, it was not simply that the complaint was prolix, but that the "unnecessary length of the Complaint" was "greatly compounded" by "disorganization" and "vague and incomprehensible allegations" coupled with "unnecessary, vague and inflammatory language in the nature of trash-talking." 13 F.Supp.2d at 395-96. In *Nevijel*, the complaint was considered unnecessarily prolix because it was "confusing and almost entirely conclusory." 651 F.2d at 674. In *Vicom*, the complaint was unnecessary prolix due to being "less-than-coherent" and "confusing, redundant, and seemingly interminable[.]" 20 F.3d at 775-76. In *Westinghouse*, the complaint was "unnecessarily complicated and verbose" because "the complaint rambles[.]" 90 F.3d at 703. In *Kuehl*, the amended complaint—despite explicit instructions by the court—was "verbose and redundant" with many counts either "nearly identical" or "ambiguous" making "the possible substance of the claim … hidden in prolixity." 8 F.3d at 907.

In contrast to *Roberto's*, *Vicom*, *Nevijel*, and *Kuehl*, the PAC is extremely organized, includes a table of contents, uses numbered paragraphs, and presents the facts in chronological order. Additionally, most (if not all) facts alleged in the PAC are detailed and specific, rather than vague or incomprehensible. Further, each claim is set out under explicit headers which direct each claim to specific defendants.

Other cases highlight this contrast as well. For example, one complaint was characterized as "a confused rambling narrative of charges and conclusions . . . none of [which] appear to relate directly to any conduct of the named defendants." *Micklus*, 705 F.2d at 316 (quotation omitted).

Therefore, one cannot say the PAC is "so rambling or confusing that [Defendants are] unaware of [Plaintiff's] claims or the basis for them. This is all that Rule 8 requires." *Zhan*, 2004 U.S. Dist. LEXIS 23763 *8. To support this, the Court need only consider the briefs filed by Defendants.[7]

### 6. COMPLEXITY

This action before the court involves a level complexity not typical of every complaint, a fact which must be considered when applying Rules and standards.

### a.  THE *IQBAL/TWOMBLY* ERA

Notably, on the subject of the PAC's length, all caselaw used in support of the Order is from a time before the *Iqbal/Twombly* era.[8]

Prior to the *Iqbal/Twombly* era (circa 2007), liberal notice pleading was all that was required. See *Conley*, 355 U.S. at 45-46 ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). However, the Supreme Court recharacterized the pleading standards in *Iqbal/Twombly*, which abrogated the liberal notice pleading regime of *Conley* in favor of a "higher standard" that is "now more stringent[.]" *Rydholm*, 44 F.4th at 1110 (Kobes, J. dissenting).

---

[7] See *infra* at I.B.2

[8] *Ciralsky* (2004), *Michaelis* (1983), *Kuehl* (1993), *Westinghouse* (1996), *Lockheed-Martin* (2003), *Reinholdson* (2002), *O'Donnell* (1949), *Vicom* (1994), *Nevijel* (1981), *Roberto's* (1998)

Further, when a complaint includes allegations against law enforcement, Plaintiff was warned to "affirmatively negate any … potential lawful alternative explanations" if Plaintiff wished to increase survival chances under Rule 12. *Edwards*, 58 F.4th at 380 (Kelly, J., dissenting). While—in theory—this should not be a requirement, the difference between what is conceivable and what is plausible is not some brightly defined line, especially while competing against the Court's consideration of obvious alternative explanations graciously afforded to law enforcement.

"Indeed, because of the Supreme Court's recent decisions re-emphasizing the robustness of the federal pleading standard, Plaintiffs were correct to err on the side of prolixity." *Landers*, 2010 U.S. Dist. LEXIS 153360 *13.

### b. COMPLEX FACTS

Firstly, there are numerous injuries—either physical, psychological, constitutional, or some combination thereof. Secondly, the injuries Plaintiff suffered occurred on three separate days. Lastly, Plaintiff's injuries are a result of a multi-agency, multi-jurisdictional law enforcement unit which—for nearly a year—had been acting lawlessly, racking up constitutional violation after constitutional violation.

As a result, the facts of this case span roughly 12 months, and detail the actions of 2 governments, at least 4 government agencies, 9 high-ranking government officials, and 16 individual law enforcement agents.

Further, to support some of the more complex claims, the PAC details roughly 75 instances where Defendants and the rank-and-file agents acting under Defendants'

12

command targeted members of the press for unlawful reprisals.[9] As *Lockheed-Martin* explains, claims which are "illustrated by 400 concrete examples of [wrongdoing] would be [acceptable.]" *Lockheed-Martin*, 328 F.3d at 379.

### c. COMPLEX CLAIMS

Three claims in particular contribute to the necessary length of the complaint: the Retaliation claim (*Count II*), *Monell* claim (*Count VII*), and Civil Conspiracy claim (*Count VIII*).

### i. First Amendment Retaliation (*Count II*)

A Retaliation claim under the First Amendment requires a showing of motivation or intent. Short of direct evidence (such as a published document or statement by a defendant), establishing motivation requires enough circumstantial evidence to allow the Court to infer plausibility.

As a result, providing enough factual support to satisfy all elements of the Retaliation claims—asserted against 27 defendants—contributed necessary length to the PAC.

### ii. *Monell* Policy and/or Custom (*Count VII*)

Municipal liability via *Monell* is complex. See *Bryan County*, 520 U.S. at 430 (Souter, J., joined by Stevens and Breyer, JJ., dissenting) ("Monell is hardly settled"); *id.*, at 430-33 (Breyer, J., joined by Stevens and Ginsburg, JJ., dissenting) (*Monell* "has

---

[9] Dkt. #21, pp. 20-39 and 56-94

generated a body of interpretive law … so complex … that is neither readily understandable nor easy to apply").

Under *Monell*, Plaintiff claims stem from both policy and custom—which are not the same thing—each requiring sufficient factual support. As a result, providing enough facts to support the *Monell* claims asserted against *two* local governments contributed necessary length to the PAC.

### iii. Civil Conspiracy (*Count VIII*)

The elements of a civil conspiracy are often established through circumstantial evidence. *McKinley*, 519 F.3d at 816. Afterall, "it is axiomatic that the typical conspiracy is rarely evidenced by explicit agreements, but must almost always be proved by inferences that may be drawn from the behavior of the alleged conspirators." *ES Dev*, 939 F.2d at 553-54. This behavior spans nearly 12 months.

As a result, providing enough facts to support the Civil Conspiracy claims—asserted against 2 local governments and 9 high-ranking law enforcement officials—contributed necessary length to the PAC.

## B. THE PAC IS NOT A SHOTGUN PLEADING

With regards to the PAC being a 'kitchen-sink' or 'shotgun' complaint, there are errors of law and/or fact in the Court's analysis.

14

## 1. THE PAC DOES NOT MEET THE DEFINITION OF A SHOTGUN PLEADING

The Court's Order quotes *Gurman*, stating the PAC "brings 'every conceivable claim against every conceivable defendant.'"[10]

However, *Gurman* defined the complaint as shotgun pleading for being an "unsightly hairball" prepared by counsel which was "littered with frivolous allegations[.]" 842 F.Supp.2d at 1153. In *Davis*, the court said a shotgun pleading will "include frivolous claims" despite being prepared by counsel. 516 F.3d at 982. In *Barmapov*, the shotgun complaint was "rife with immaterial" and "irrelevant" details, "including counts against defendants who had no part in [it,]" failed to make "any effort to connect or separate which … factual allegations relate to a particular count[,]" and "also includes numerous vague and conclusory allegations." 986 F.3d at 1325.

*White* takes a step further to explain—in detail—what a shotgun pleading looks like: with regards to a confinement facility, plaintiffs alleged that <u>every</u> Defendant—including the Governor of Minnesota himself—*personally* denied plaintiffs access to the gym, yard, and recreation areas, was *personally* responsible for the facility's policy related to visitors, use of linens, and canteen access, *personally* searched plaintiffs' cells, <u>and</u> *personally* seized property. 2023 U.S. Dist. LEXIS 71 *9. This left the court unable to "conclude from the pleading which of those Defendants Plaintiffs actually believe are responsible for any particular action." *Id.* at *11.

---

[10] Court's Order, pp. 3-4

In contrast, the PAC asserts each claim against specific defendants, and is clear as to why the claim is asserted against those defendants. Furthermore, each factual allegation is made with specificity and shows what each named defendant did (or failed to do).

## 2. DEFENDANTS' DO NOT PROPERLY ARGUE THE PAC IS A SHOTGUN PLEADING

The five motions to dismiss submitted before the court are essentially filed by three groups of defendants: State Defendants, County Defendants, and City Defendants.[11]

The State and County Defendants did not raise arguments under Rule 8, and instead, argued the merits of the claims made against them under a Rule 12(b)(6) standard of review. This is likely because "[t]he defendants know these rules full well; [a government defendant] is no foe of lengthy complaints when it finds itself in the position of plaintiff." *Ciralsky*, 355 F.3d at 670. Additionally, the State and County Defendants have faced a similar set of facts in *Goyette* where the operative third amended complaint—drafted by Plaintiffs represented by numerous attorneys and law firms—has 6 claims, spans 173 pages, and has nearly 500 paragraphs.[12] The *Goyette* complaint, of course, was not dismissed under Rule 8.

---

[11] At the time the complaint was filed, some Defendants no longer held their official positions. Unlike Hennepin County (with regard to Sheriff Hutchinson), and the State of Minnesota (with regard to Commissioner Harrington), the City of Brooklyn Center declined to represent Mayor Elliott. However, like the majority of his arguments, Mayor Elliott's argument regarding Rule 8 is nothing more than 'what they said' and simply points to the City's memoranda.

[12] *Goyette v. City of Minneapolis*, Case No. 20-CV-1302, ECF No. 228

As such, it is notable that—in spite of applying only a Rule 12 standard of review—it was only City Defendants who included a 'shotgun complaint' argument. In doing so, City Defendants mustered up only <u>one</u> example—the Assault (*COUNT XI*) claim—to suggest that Plaintiff's complaint was a shotgun pleading.[13] Yet, as Plaintiff's response brief points out,[14] the Assault claim is asserted against them pursuant to *Minn. Stat. §* 466.02 and as co-conspirators under *Harding*, both of which was made explicitly clear in the PAC.[15] Of course, in their reply, City Defendants abandoned their 'shotgun pleading' argument, and focused solely on Rule 12 arguments.[16]

Furthermore, City Defendants explicitly acknowledge that Plaintiff "named which Defendants he is asserting each claim against in his Amended Complaint[.]"[17] Is this not what Rule 8 requires?

### 3. NUMEROUS CLAIMS AND DEFENDANTS DO NOT DEFINE A SHOTGUN PLEADING

Simply because a complaint has numerous claims and numerous defendants does not—without more—make the complaint a 'shotgun' or 'kitchen-sink' complaint.

This is because Plaintiff "may state as many separate claims" as he has, "regardless of consistency[,]" *Fed.R.Civ.P.* 8(d)(3), so long as each claim and legal contention asserted by Plaintiff "are warranted by existing law or by a nonfrivolous argument for extending,

---

[13] Dkt. #44, pp.13-16

[14] Dkt. #91, pp.2-5

[15] *PAC* ¶¶ 1186, 1188

[16] Dkt. #95

[17] Dkt. #44, p.15

modifying, or reversing existing law or for establishing new law[,]" *Fed.R.Civ.P.* 11(b)(2), and Plaintiff's "factual contentions have evidentiary support" *or* "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" *Fed.R.Civ.P.* 11(b)(3).

Plaintiff has done just that: stated separate claims against each of those culpable by existing law or, in the alternative, a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

## C. THE PAC SATISFIES RULE 8

It should be noted that Plaintiff fully understands his complaint is not perfect, and there is room for improvement. The complaint certainly has "a substantial amount of facts, some unnecessary," but should not be "confusing[.]" *Main*, 2013 U.S. Dist. LEXIS 8447 *11.

"Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Roberto's*, 13 F.Supp. 2d at 395. Despite Plaintiff acknowledging that the "complaint could be improved … it is intelligible and gives the defendants notice of the claim for relief." *Bennett* 153 F.3d at 518. "This is all that Rule 8 requires." *Zhan*, 2004 U.S. Dist. LEXIS 23763 *8.

Interestingly, while the complaint in *Vicom* was admonished for being "less-than-coherent" and "confusing, redundant, and seemingly interminable[,]" the complaint was dismissed on the merits, and not under Rule 8. 20 F.3d at 775-76.

As written, the PAC satisfies "the essential function of a complaint," which is "to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian*, 760 F.3d at 848 (internal quotation marks omitted).

Further, "under Rule 8, Defendants may simply state they lack knowledge or information if they are unable to 'form a belief about the truth of an allegation[,]'" *Main*, 2013 U.S. Dist. LEXIS 8447 *13 (quoting Fed.R.Civ.P 8(b)(5)), or move the court for a "more definite statement[.]" *Fed.R.Civ.P.* 12(e).

## D. THE PAC REQUIRES *PRO SE* STANDARDS TO BE APPLIED

"The court has a funny way of safeguarding important constitutional values" when "it locks and deadbolts the courthouse door" by "disregard[ing] the standard of review and read[ing] the complaint in the least charitable way possible." *Hawse*, 7 F.4th at 694-696 (Stras, J., dissenting).

Unlike the caselaw supporting the Court's Order, this present case before the Court does not involve a lawyer who has deliberately persisted in violating Rule 8, but rather a *pro se* plaintiff.

For example, in *Nevijel*, the attorney had a long "history of non-compliance with the Federal Rules of Civil Procedure" which intentionally subjected defendants to "harassing litigation[.]" 651 F.2d at 675. In *Michaelis*, lawyer-plaintiff "refused persistently to comply with the requirements of Rule 8 despite adequate warning from the district court and sufficient opportunity to do so." 717 F.2d at 439. In *Ciralsky*, "[t]he court ordered the plaintiff to 'eliminate[]' the 'excess,' and gave him leave to file … an amended

complaint 'that complies with Rule 8(a)(2)'[,]" but instead, plaintiff's counsel refiled a complaint that "fatally suffers from an excess of unnecessary evidentiary detail" which prompted the court to dismiss the complaint without prejudice. 355 F.3d at 665.

Justice Black reminded the courts—roughly 70 years ago and in connection with an order adopting revised Rules of this Court—that the "principle function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts." 346 U.S. 945, 946 (1954). As Jim Sandman, President of Legal Services Corporation stated, "when an unrepresented litigant goes into a court room, he or she is confronted with a system that was constructed by lawyers, for lawyers, on the assumption that every litigant has a lawyer. The language of the law, rules of civil procedure, and rules of evidence, he said, were all designed with lawyers in mind."[18]

This is, of course, why "complaints drafted by *pro se* plaintiffs are held to 'less stringent standards' than those applied to complaints drafted by attorneys." *Zhan*, 2004 U.S. Dist. LEXIS 23763 *8 (quoting *Haines*, 404 U.S. at 520).[19]

Therefore, a *pro se* complaint is not always dismissed "merely because it contains a repetitious and irrelevant matter, a disposable husk around a core of proper pleading." *Ruby Foods*, 269 F.3d at 820. "[I]f the court underst[ands] the allegations sufficiently to

---

[18] https://docs.legis.wisconsin.gov/misc/lc/study/2016/1492/020_september_14 _2016_10_00_a_m_room_413_north_gar/sept14mins_civil (at p.4)

[19] In a response briefing, Plaintiff explicitly acknowledged he "is aware [his *pro se* status] does not excuse Plaintiff from being required to follow the Federal Rules of Civil Procedure." [Dkt. #91, p. 5]

determine that they could state a claim for relief, the complaint has satisfied Rule 8. *Kittay*,

230 F.3d at 541.

## II.   PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

By not granting Plaintiff with leave to amend, an error of law and/or fact exists.

### A. PLAINTIFF HAS SHOWN A WILLINGNESS TO COMPLY

"Though the [plaintiff] did not file a formal motion to amend their complaint, that

failure is not necessarily fatal as long as they show a willingness to amend the complaint."

*Wisdom*, 167 F.3d at 409 (citing *Ferguson*, 88 F.3d at 651).

In each of Plaintiff's response briefs,[20] Plaintiff asked the court for permission to

amend his complaint. While this request was in the context of Rule 12, the *only* standard

of review each Defendant applied in their memoranda, the plaintiff seeking permission to

amend should be liberally construed as showing a willingness to amend his complaint to

cure any deficiency, including a Rule 8 violation. In other words, Plaintiff—in a timely

manner—requested that he be given "leave to amend" which he meant to include

'opportunity to secure leave in accordance with Local Rule 15'. *Id.* A mistake, but hardly

one that should be terminal.

For this reason, Plaintiff believes the Court may have misunderstood and

misconstrued Plaintiff's informal request for *permission to file* a Rule 15 Motion for Leave

to Amend (in the event the Court granted Defendants' Motion to Dismiss) as an *actual*

Rule 15 Motion for Leave to Amend. See *Van Horn*, 269 F.Supp.2d at 1069 ("[A] Rule

---

[20] Dkt. #84, p.48 at n.19; #91, p.48 at n.13; #105, p.46 at n.13; #113, p.48 at n.18; &
#118, p.46 n.17.

59(e) motion is appropriate where the Court misunderstood the facts, a party's arguments, or the controlling law." (citing *Servants*, 204 F.3d at 1012)).

The "lack of formal motion to amend" is not "'sufficient ground for a district court's dismissal without leave to amend, so long as the plaintiff has made its willingness to amend clear.'" *Ferguson*, 88 F.3d at 651 (quoting *McLaughlin*, 962 F.2d at 195). And, of course, "[i]n the absence of any apparent or declared reason … the leave sought should, as the rules require, be 'freely given.'" *Dicken*, 2017 U.S. Dist. LEXIS 83130 *2 (quoting *Foman*, 371 U.S. 182).

## B. COURT WAS AWARE OF STATUTE OF LIMITATIONS

Mayor Elliott made an argument that Plaintiff's action should be dismissed against him, because Mayor Elliott was not properly served.[21] In response, Plaintiff alerted the Court that if Plaintiff was not provided an opportunity to remedy issues, and instead the Court dismissed the action, claims would be time-barred and subject to statute of limitations and prevent Plaintiff from refiling the action.[22]

When a complaint is timely filed, the statute of limitations is tolled, and subsequent amendments to the complaint are also regarded as timely. See *Fed.R.Civ.P.* 15(c) (providing that an "amendment of a pleading relates back to the date of the original pleading" under specified circumstances); *Ahmed*, 297 F.3d at 207-08. However, once a suit is dismissed, even if without prejudice, "the tolling effect of the filing of the suit is

---

[21] Dkt. #100, pp.15-16

[22] Dkt. #118, pp.5-6

wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Elmore*, 227 F.3d at 1011.[23]

Additionally, under the Prison Litigation Reform Act ("PLRA"), would Plaintiff suffer an additional penalty where dismissal of the action would count as a 'strike' against Plaintiff despite not being frivolous or meritless? 28 U.S.C. § 1915(g).

"Notably, a court must be cautious about dismissing a case [effectively] *with prejudice* on Rule 8 grounds, because doing so forecloses the plaintiff's opportunity to file a cured complaint in future proceedings and start the action anew." *Jiggetts*, 319 F.R.D. at 414 (emphasis in original). Therefore, exercise of this Court's discretion to dismiss requires that "possible and meaningful alternatives be reasonably explored, bearing in mind the drastic foreclosure of rights that dismissal effects." *Nevijel*, 651 F.2d at 674.

## C. MERITS, NOT TECHNICALITIES

The Court's "jurisprudential preference [is] for adjudication of cases on their merits rather than on the basis of formalities." *Salahuddin*, 861 F.2d 42; *see* 5 Wright & Miller § 1217, at 178 (2d ed. 1990). "Resolution of claims on their merits is favored under Federal Rule of Civil Procedure 15(a)(2), and 'decisions on the merits [should not] be avoided on the basis of . . . mere technicalities.'" *Senderra*, 2022 U.S. Dist. LEXIS 42615 *18-19

---

[23] Of course, if a suit is dismissed *with* prejudice, "any issue concerning the bar of the statute of limitations to the refiling of the suit will be moot because a suit that has been dismissed with prejudice cannot be refiled; the refiling is blocked by the doctrine of res judicata." *Elmore*, 227 F.3d at 1011.

(quoting *Ash*, 799 F.3d at 962-63 (brackets in original)); see also *Ferguson*, 88 F.3d at 650;

*Bank*, 928 F.2d at 1112 n.6.

This is unless, of course, Plaintiff has shown "'compelling reasons such as undue

delay, or dilatory motive, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the non-moving party, or futility of the amendment'" *Id.* No

such compelling reasons exist.

As the Supreme Court said in *Swierkiewicz*: Rule 8 "was adopted to focus litigation

on the merits of the claim…. 'The Federal Rules reject the approach that pleading is a game

of skill in which one misstep by counsel may be decisive to the outcome and accept the

principle that the purpose of pleading is to facilitate a proper decision on the merits.'" 534

U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

## D.  LEAVE TO AMEND OR REPLEAD

"When a trial court concludes that an initial complaint fails to satisfy Rule 8, an

appropriate remedy is to strike the complaint … and to provide the plaintiff with an

opportunity to file an amended complaint that complies with the Rules." *Jiggetts*, 319

F.R.D. at 413-14; see also *Achagzai*, 109 F.Supp.3d at 69 (holding that if a court concludes

a "complaint fails to satisfy Rule 8, an appropriate remedy is to strike the complaint … and

to provide the plaintiff with an opportunity to file an amended complaint that complies

with the Rules"); *Michaelis*, 717 F.2d at 438-39 ("Ordinarily dismissal of a plaintiff's

complaint for failure to comply with Rule 8 should be with leave to amend"); *Roberto's*,

13 F.Supp.2d at 397 (holding that if a district court exercises its discretion to dismiss a

complaint under Rule 8, a plaintiff "generally should be granted leave to amend." (citing *Salahuddin*, 861 F.2d at 43)).

"Courts should grant post-dismissal leave to amend when amendment will not be futile, there are no other reasons to deny leave, and amendment is needed to afford a plaintiff an 'opportunity to test his claims on the merits.'" *Mask*, 752 F.3d at 744 (quoting *Foman*, 371 U.S. at 182). "This is especially true where, as here, the Complaint is not entirely incomprehensible" and pleads at least some "claims that cannot be termed frivolous on their face." *Roberto's*, 13 F.Supp.2d at 397 (quotations omitted).

This becomes even more apparent when looking at cases where a complaint was dismissed under Rule 8. In *Roberto's*, despite "the prolixity of the pleading [being] greatly compounded" by "disorganization" and "vague and incomprehensible allegations[,]" the plaintiffs were "granted leave to replead[.]" 13 F.Supp.2d at 395-97. In *Micklus*, plaintiff's "first two complaints were dismissed with leave to amend." 705 F.2d at 316. In *Reinholdson*, "Plaintiffs were allowed to put their allegations in final form in a Second Amended Complaint," which "had the effect of allowing Plaintiffs to attempt to cure the pleading deficiencies[.]" 2002 U.S. Dist. LEXIS 18886 *3-4. In *Westinghouse*, the court went through "two rounds of difficult motions, had narrowed plaintiffs' claims" prior to "order[ing] plaintiffs to submit a third amended complaint" with advice. 90 F.3d at 703. In *Jiggetts*, the plaintiffs "have had five opportunities to produce a complaint" that would satisfy the Rules. 319 F.R.D. at 414. In *Jackson*, the 'kitchen-sink' complaint was dismissed after the courts "warned Plaintiff at least three times that complaints like the present one run afoul of the Federal Rules." 2021 U.S. Dist. LEXIS 232755 *13. In *Kuehl*,

plaintiffs "had a chance to make meaningful modifications to their complaint and, indeed, were given some advice about how to do so." 8 F.3d at 908. In *Reed*, the complaint was "vague and ambiguous" with "significant omissions", yet the court proceeded to "allow Plaintiff to amend [their] complaint." *Reed*, 2024 U.S. Dist. LEXIS 7625 *12-13.

In *Salahuddin*, "the Court of Appeals assigned error to the district court's failure to permit leave to amend, since, despite its length, the complaint 'clearly plead[ed] at least some claims that cannot be termed frivolous on their face.'" *Roberto's*, 13 F.Supp.2d at 395 (quoting *Salahuddin*, 861 F.2d at 43).

As noted above, Plaintiff has not persisted in violating the Federal Rules of Civil Procedure, Local Rules, nor any Court Order. "[U]sually when a plaintiff's complaint is dismissed for failure to comply with Rule 8(a), that dismissal is to be with leave to amend" unless that plaintiff "has persisted in violating the rule[.]" *Micklus*, 705 F.2d at 317 n.3 (quotation omitted).

As such, Plaintiff is more than willing to improve his complaint. Therefore, as precedent suggests, Plaintiff should be allowed to replead since it "cannot be said that [allowing Plaintiff to replead] will be an impossible or futile effort." *Roberto's*, 13 F.Supp.2d at 397.

### E.  PLAINTIFF SEEKS GUIDANCE OR GUIDE POSTS

"In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings." *Vibe Micro*, 878 F.3d at 1296.

For example, in *Roberto's*, the Court made "an effort to provide the plaintiffs with guideposts in redrafting the Complaint[.]" *Roberto's*, 13 F.Supp.2d at 397. In *Kuehl*, the court "gave plaintiffs rather specific guidance as to how the complaint should be amended." *Kuehl*, 8 F.3d at 907.

Therefore, should this Court strike the complaint and provide Plaintiff the opportunity to replead, then Plaintiff respectfully asks the Court for some guidance so he may avoid future Rule 8 violations.

**CONCLUSION**

To prevent manifest injustice, the Plaintiff respectfully asks that this Court vacate its judgement—which would be the death knell of Plaintiff's action and end his ability to seek justice—and, instead, rule on the motions to dismiss as argued by the parties under Rule 12.

In the alternative, Plaintiff respectfully requests this Court alter, amend, or vacate its judgement to (1) stay termination of the action for 60 days, (2) strike the complaint, and (3) order Plaintiff to file an Amended Complaint within 60 days that is streamlined, reorganized, and consistent with the Federal Rules of Civil Procedure and this Court's orders.

Dated: April 4, 2024

Bjorn Iverson
MCF-Moose Lake #263301
1000 Lake Shore Drive
Moose Lake, MN 55767

*Plaintiff Pro Se*